IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | § § § § | |
| Plaintiffs, | § § | No. 3:25-cv-2885-L-BN |
| V. | § § | |
| SOUTHWEST AIRLINES CO., | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO SEVER AND STAY CLAIMS**

Defendant Southwest Airlines Co. has filed a Motion to Sever and Stay Claims Against In-Flight Connectivity Systems Based on the Customer-Suit Exception. *See* Dkt. No. 17. And it has filed an unopposed motion for oral argument on the motion to sever and stay. *See* Dkt. No. 103.

Having considered the record, the Court denies the motion for oral argument [Dkt. No. 103] and grants the motion to sever and stay [Dkt. No. 17]. *See Gonzales v. Allstate Vehicle & Prop. Ins. Co.*, No. 6:17-cv-58-RP-JCM, 2017 WL 4678238, at *1 (W.D. Tex. Oct. 17, 2017) ("Although the Fifth Circuit has never decided whether a motion to sever and abate is a nondispositive matter for the purposes of 28 U.S.C. § 636(b) and [Federal Rule of Civil Procedure] 72, this Court construes motions to sever as nondispositive under those provisions for the following reasons.").

**Background**

This lawsuit, filed on November 2, 2024, concerns several patents held by

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures"), including U.S. Patent Nos. 7,324,469 (the "'469 Patent") and 8,027,326 (the "'326 Patent"). *See* Dkt. No. 97 at 1. (The Court's citations to page numbers in the record refer to document page numbers, which may differ from labeled page numbers or Bates numbers.)

Intellectual Ventures allege, in part, that Southwest infringed the '469 and '326 Patents by "offer[ing] Wi-Fi service, including satellite-based Wi-Fi, through one or more providers such as Viasat[, Inc.] and Anuvu [Corp.]" and "us[ing] hardware and/or software from these providers." *Id.* at 27*; see id.* at 22-23.

In January of 2025, Viasat and Anuvu each filed a complaint for declaratory relief in the District of Delaware (the "Delaware Actions"). *See* Dkt. Nos. 17-2 & 17-3. Viasat and Anuvu seek judgments that their products do not infringe the '469 and '326 Patents. *See id.*

On February 12, 2025, Southwest moved to sever the '469 and '326 Patent claims from this lawsuit and stay the severed action pending the resolution of the Delaware Actions. *See* Dkt. No. 17 at 5. Southwest argues that both the customer-suit exception and traditional stay factors warrants severing and staying the '469 and '326 Patent claims. *See generally id.*

Since the motion was filed, this lawsuit was transferred to this district from the Western District of Texas and consolidated with another case. *See* Dkt. Nos. 25 & 88. The Court has ordered the parties to confer and proposed new pre-trial deadlines and a new trial date. *See* Dkt. No. 120. And Southwest has filed a Motion to Dismiss.

*See* Dkt. No. 99.

Southwest has requested oral argument on the motion to sever and stay [Dkt. No. 17] and the motion to dismiss [Dkt. No. 99]. *See* Dkt. Nos. 103 & 104.

Briefing on the motions is now complete. *See* Dkt. Nos. 18, 20, 46, 48-49, 57-60, 106, 109.

## Legal Standards

### I.    Severing Claims

Federal Rule of Civil Procedure 21 provides that a court may "sever any claim against a party." Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995).

But a court may also sever a claim "when there are sufficient other reasons for ordering a severance." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *4 (E.D. Tex. Oct. 19, 2016) (citing *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)). Generally, "[a] district court has wide discretion to sever a claim against a party into separate cases, in vindication of public and private factors." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (citations omitted). "[S]everance will be refused if the court believes that it only will result in delay, inconvenience, or added expense." *Id.* at 680 n.40 (citing 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1689 (3d ed. 2004)).

The movant bears the burden in seeking severance under Rule 21. *See*

*Charalambopoulos v. Grammer,* No. 3:14-cv-2424-D, 2016 WL 5942225, *4-*5 (N.D. Tex. Oct. 13, 2016).

"Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

## II.  <u>Staying Proceedings</u>

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and the effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Court therefore has a "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice," *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). But, although the Court possesses "broad discretion in this area, such control is not unbounded." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis*, 299 U.S. at 254-55).

Courts consider three factors on a motion to stay: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3)

whether discovery is complete and whether a trial date has been set." *Unicorn Global, Inc. v. Golabs, Inc.*, No. 3:19-cv-754-N-BT, 2020 WL 9076548, at *1 (N.D. Tex. Oct. 7, 2020) (citing *Rembrandt Wireless Tech., LP v. Apple, Inc.*, No. 2:19-cv-25-JRG, 2019 WL 6344471, at *2 (E.D. Tex. Nov. 27, 2019)).

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "The party seeking a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Charalambopoulos*, 2018 WL 514253, at *1 (cleaned up).

## Analysis

Southwest invokes the customer-suit exception and traditional stay factors to argue that the '469 and '326 Patent claims should be severed and stayed while the Delaware Actions are litigated. *See* Dkt. No. 17 at 5. It contends that it is merely a "downstream" user of Viasat's and Anuvu's products and, so, "[g]iven the pending Delaware Actions, proceeding against Southwest in parallel would be inefficient and duplicative." *Id.*

Intellectual Ventures contend that "Southwest is not a mere 'reseller,' making the customer-suit exception inapplicable," and that "a stay would not simplify the litigation and is inconvenient." Dkt. No. 18 at 4, 5.

Supplied with extensive briefing, the Court finds that oral argument is unnecessary to rule on the motion to sever and stay. And, on the record before the Court, it finds that the '469 and '326 Patent claims should be severed and stayed

under both the customer-suit exception and the traditional stay factors.

## I.    <u>Customer-Suit Exception</u>

"The 'customer-suit exception' is an exception to the first-to-file rule 'whereby litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Unicorn Global*, 2020 WL 9076548, at *1 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum. *SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*, No. 1:23-cv-688-RP, 2024 WL 3843804, at *1 (W.D. Tex. Apr. 19, 2024) (quoting *Spread Spectrum Screening v. Eastman Kodak Co.*, 657 F.3d 1349, 1356 (Fed. Cir. 2011)).

And "district courts in this circuit have specifically applied the rationale of the customer-suit exception to instances of severing and staying a case." *Unicorn Global*, 2020 WL 9076548, at *1 (citing *Opticurrent*, 2016 WL 9275395, at *5).

Courts analyze three factors when determining whether the customer-suit exception applies: (1) whether the customer-defendant "is merely a reseller" of the product; (2) whether the customer-defendant "agrees to be bound by any decision" in the manufacturer's case "that is in favor of the patent owner"; and (3) "whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495-WCB, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018) (cleaned up). But "the Court does not apply the factors in a mechanical or

precise manner and instead adopts a flexible approach in order to assess whether judicial resources will be saved." *Id.* (cleaned up).

Here, the Court finds that all three customer-suit exception factors weigh in favor of staying the '469 and '326 Patent claims.

**A. Whether Southwest is "merely a reseller" of the product.**

Southwest argues that is merely a reseller of Viasat's and Anuvu's products because (1) Viasat and Anuvu "provide all of the hardware, software, and connectivity services to Southwest"; (2) Viasat and Anuvu "maintain exclusive design control over the components, configurations, and functions of the accused in-flight connectivity systems"; (3) "Southwest does not update the hardware or software provided by Viasat and Anuvu"; and (4) Southwest relies fully on Viasat and Anuvu for ongoing system service, support, updates, and resolving technical issues concerning the accused in-flight connectivity systems." Dkt. No. 17 at 13 (citing Dkt. No. 17-1 at 1).

Intellectual Ventures respond that the customer-suit exception does not apply because "Southwest does not merely purchase and utilize those products in their 'off the shelf' condition. Rather, Southwest incorporates those products into its aircraft for 'in flight' passenger use." Dkt. No. 18 at 7 (citations omitted).

Specifically, Intellectual Ventures point to Claim 24 of the '469 Patent, which describes Southwest's in-flight connectivity system as "includ[ing] a web-ready device operatively coupled to [ ] at least one router, the web-read device having a browser application operating thereon for accessing the Internet." Dkt. No. 97-10 at 18. But their complaint alleges that "Southwest uses routers that support WiFi 802.11

ac/abgn, such as the Viasat Select Router." Dkt. No. 97-9 at 3; Dkt. No. 97-10 at 6. And Southwest has provided evidence that Viasat and Anuvu provide the hardware for their in-flight connectivity systems. *See* Dkt. No. 49-5 at 5-8.

Intellectual Ventures' response that Southwest's systems are "incomplete without incorporation by Southwest of those components in its airplanes, along with other hardware/software necessary for the system to allow passengers to utilize in-flight Wi-Fi," is unpersuasive. Dkt. No. 18 at 9. That Southwest "physically installs" the Viasat and Anuvu components on its aircraft, Dkt. No. 46 at 8 (citing Dkt. No. 46-4 at 7), does not make Southwest more than an "end user" of the products, *SITO Mobile*, 2024 WL 3843804, at *3. *See CyWee*, 2018 WL 4002776, at *5-*6 (applying "the rationale of the customer suit exception" where "a device manufacturer installs software central to an infringement inquiry made by a third-party; citing *In re Google Inc.*, 588 F. App'x 988, 989 (Fed. Cir. 2014)). And Intellectual Venture cites no evidence supporting its argument that Southwest provides the "other hardware/software necessary" for the accused systems.

Intellectual Ventures also point to the part of Claim 24 stating that "the user may authenticate the subscription account and access the Internet," here, on the SouthwestWiFi.com web portal. Dkt. No. 97-10 at 24.

But Southwest has submitted evidence suggesting that it "purchase[s] a full system from each of the WiFi vendors" – a system that includes the customer "portal." Dkt. No. 49-5 at 5-6. Intellectual Ventures provide no evidence in rebuttal. And they do not allege that the visual design of the customer portal, which is specific to

Southwest, infringes their patents. *See* Dkt. No. 97.

The Court also notes that Viasat's and Anuvu's complaints in the Delaware Actions address Claim 24 of the '469 Patent, suggesting that the claims in this lawsuit and the Delaware Actions will "substantially overlap[ ]." *CyWee*, 2018 WL 4002776, at *5; *see* Dkt. No. 17-2 at 12-13; Dkt. No. 17-3 at 13-14; *cf. Intellectual Ventures I LLC v. Am. Airlines, Inc.*, No. 4:24-cv-980, 2025 WL 2161425, at *3 (E.D. Tex. July 30, 2025) (finding that the '469 Patent claim should not be stayed where the "functionality" described in Claim 24 of the '469 Patent was "not addressed in Viasat's Declaratory Judgment Complaint").

Intellectual Ventures also contend that, "[e]ven assuming *arguendo* that Viasat's and Anuvu's products alone directly infringe the '469 Patent, that does not mean Southwest's conduct and services do not directly and indirectly infringe that patent, for example in the context of web-ready devices that are not provided by Viasat and Anuvu." Dkt. No. 18 at 8-9.

But they provide no facts or evidence – such as examples of these "web-ready devices" – supporting this argument. *See Opticurrent*, 2016 WL 9275395, at *5 (Whether or not the claims against [the manufacturer] are completely dispositive of the claims against [the customer], a finding that [the manufacturer] infringes is a prerequisite to recovery from [the customer] given that [the customer] is merely a distributor or reseller of the accused products."' (cleaned up)).

And, so, for the purposes of this motion, Southwest has met its burden to show that it is merely a reseller of the accused systems. And this factor weighs in favor of

a stay.

**B. Whether Southwest agrees to be bound by the Delaware Actions.**

"Southwest agrees to be bound" by the findings in the declaratory judgments in the Delaware Actions. Dkt. No. 17 at 7.

This factor weighs in favor of staying the claims. *See SITO Mobile*, 2024 WL 3843804, at *3.

**C. Whether Viasat and Anuvu are the sole sources of the accused functionality.**

Southwest contends that the accused in-fight connectivity systems were provided only by Viasat and Anuvu. *See* Dkt. No. 17 at 14.

Intellectual Ventures dispute this argument on two fronts.

First, Intellectual Ventures contend that the third factor is not met because "both" Viasat and Anuvu are providers of the accused system and, so, "neither Viasat nor Anuvu is the only source of the infringing product." Dkt. No. 18 at 11 (internal quotes omitted).

This argument fails to persuade. Courts in this circuit have found the customer-suit exception to apply in cases against multiple manufacturers, even where those manufacturers were litigating their own claims in separate lawsuits. *See, e.g.*, *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*, No. 6:20-cv-316-ADA, 2021 WL 4555803, at *5 (W.D. Tex. Oct. 4, 2021).

Second, Intellectual Ventures argue that the accused systems come from "at least" Viasat and Anuvu. Dkt. No. 18 at 11. Specifically, they argue that "Panasonic Avionics also provided in-flight connectivity systems during the damages time

frame." Dkt. No. 46 at 7. And they contend that "Southwest acquired aircraft from Air Tran" that used systems from Gogo Inc. *Id.*; *see* Dkt. No. 49 at 9.

Southwest does not dispute that Panasonic provided in-flight connectivity systems to Southwest, and it concedes that "a small number of Panasonic systems remained on Southwest airplanes" after its agreement with Panasonic terminated in October 2018. Dkt. No. 49 at 7. But it provides evidence that those systems were "retrofitted 'with Anuvu systems in 2018 or 2019.'" *Id.* at 9 (quoting Dkt. No. 49-5 at 9). And it shows that "[a]ny Gogo systems were replaced with Anuvu systems in the '2014, 2015 time frame.'" *Id.* (quoting Dkt. No. 49-5 at 11).

And, so, Southwest argues, any alleged infringement related to the Panasonic or Gogo systems were outside the damages period for these claims, which began with actual notice in 2024. *See id.* at 10.

The marking statute, 35 U.S.C. § 287(a), "requires a patentee to mark any patented article they make or sell, as a form of constructive notice, or directly notify infringers of their patent prior to filing suit to recover pre-suit damages for patent infringement." *Ortiz & Assocs. Consulting. LLC v. VIZIO, Inc.*, No. 3:23-cv-791-N, 2023 WL 7184042, at *2 (N.D. Tex. Nov. 1, 2023) (citing *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) (citing, in turn, 35 U.S.C. §287(a))). "[W]hile the marking requirement is inapplicable when a patentee does not make or sell patented articles, a patentee's licensees must comply with the statute where they are 'making any patented article for or under [the patentee].'" *Id.* (cleaned up).

Here, Southwest received actual notice of the alleged infringement on September 30, 2024. *See* Dkt. No. 97 at 12.

But Intellectual Ventures allege in their complaint that they "do not make or sell products" and that they "have entered into settlement licenses with other entities." Dkt. No. 97 at 48. They also allege that "discovery will show that [they] have substantially complied with 35 U.S.C. § 287(a)." *Id.*

And Southwest, as the party with the burden to prove that the customer-suit exception applies, has not addressed whether Intellectual Ventures' alleged licensees – rather than Intellectual Ventures themselves – failed to comply with the marking statute.

And, so, the Court cannot find, for purposes of this motion, that alleged infringement by Panasonic's and Gogo's systems was outside the damages period.

On the other hand, Intellectual Ventures' complaint, on its face, "accuses systems provided solely by Viasat and Anuvu." Dkt. No. 17 at 14. Neither Panasonic nor Gogo are mentioned in the complaint. *See* Dkt. No. 97. In fact, the complaint highlights excerpts from Southwest's website that discuss Southwest's in-flight systems from the last three years:

> We're excited to announce that as of yesterday, March 9, 2023, our first aircraft equipped with hardware from our new WiFi vendor, Viasat, has entered service. … As we prepare for additional Viasat-equipped aircraft deliveries, we're also making significant progress updating our existing fleet with new Anuvu hardware (our original WiFi vendor). We have now upgraded more than 400 aircraft and are well on our way to upgrading the entire fleet by the third quarter of this year.
>
> Between our upgraded Anuvu hardware and integration of Viasat, we're bringing a faster, more reliable WiFi experience.

Dkt. No. 97-9 at 3 (supporting the '326 Patent claim); Dkt. No. 97-10 at 3 (supporting the '469 Patent claim).

And Intellectual Ventures have not explained how any manufacturers besides Viasat and Anuvu contributed to the accused systems.

And, so, while Panasonic and Gogo may have been providers of Southwest's in-flight connectivity systems sometime during the broad damages period, the Court is not convinced that they provided the systems that Intellectual Ventures accuses of infringing the '326 and '469 Patents. *Cf. Am. Airlines*, 2025 WL 2161425, at *3 ("This factor weighs against a stay. The record reflects that Defendant uses multiple vendors to provide in-flight connectivity services, and the <u>Complaint identifies products</u> from Intelsat, Panasonic, and Viasat as <u>contributing to the allegedly infringing systems</u>. Defendant does not dispute this.").

And Intellectual Ventures cannot point to any other alleged provider with specificity.

In their complaint, Intellectual Ventures "reserve[d] the right to investigate" whether additional in-flight connectivity providers exist. Dkt. No. 97-10 at 4 n.2.

But a contention that Southwest "possibly uses (or has used) other companies and technologies" does not amount to identifying other providers and cannot rebut Southwest's evidence. Dkt. No. 18 at 4; *accord GreatGigz Sols., LLC v. CHRISTUS Health*, No. 6:21-cv-1310-ADA, 2022 WL 22869797, at *3 (W.D. Tex. Sept. 12, 2022) (holding that plaintiff's argument "that its 'allegations against Defendant are not limited to only their use of [the manufacturer's] systems,'" without any "specific

information," cannot rebut the application of the customer-suit exception's third factor).

And, so, other providers' contributions to Southwest's accused systems – insofar as any exist and could not be litigated in the Delaware Actions – would not undermine the Delaware Actions' ability to resolve the "major issues" of the '469 and '326 Patent claims. *Spread Spectrum*, 657 F.3d at 1358 ("[T]he manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer – not every issue – in order to justify a stay of the customer suits." (quoting *Katz*, 909 F.2d at 1464)); *see Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Nos. 6:11-cv-234-LED-JDL & 6:11-cv-445-LED-JDL, 2012 WL 10816848, at *11 (E.D. Tex. May 30, 2012) ("Because 'the guiding principles in the customer-suit exception cases are efficiency and judicial economy," it is necessary to evaluate the customer-suit exception in light of the ['469] action and the ['326] action.").

The Court finds that this factor weighs in favor of a stay.

And, because all three factors favor a stay, the Court finds that the '469 and '326 Patent claims should be severed and stayed under the customer-suit exception.

## II.  Traditional Stay Factors

Even if the customer-suit exception did not apply, the Court finds that the traditional stay factors warrant severing and staying the '469 and '326 Patent claims until the Delaware Actions are resolved.

### A. Whether a stay will unduly prejudice Intellectual Ventures.

-14-

Intellectual Ventures argue that a stay will cause it undue prejudice.

First, they argue that staying the '469 and '326 Patent claims will unfairly delay their ability to vindicate their patent rights. *See* Dkt. No. 17 at 12.

The Court is unpersuaded. Southwest has shown that the Delaware Actions are procedurally ahead of this lawsuit, as claim construction briefing in the Delaware Actions has already begun. *See* Dkt. No. 109 at 5; *see also GreatGigz Sols., LLC v. Costco Wholesale Corp.*, Nos. 6:21-cv-808 & 6:21-cv-809, 2022 WL 1037114, at *3 (W.D. Tex. Apr. 6, 2022).

And, in any event, "the interest in timely enforcement is 'present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.'" *CyWee*, 2018 WL 4002776, at *3 (citing *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015)).

Second, Intellectual Ventures argue that a stay would "risk spoliation of infringement evidence." Dkt. No. 18 at 12. But they provide no specific facts to support this general contention.

Third, Intellectual Ventures argue that litigating the '469 and '326 Patent claims in Delaware – a forum they did not choose – would force them to "transport documentary evidence of Southwest's use of the infringing technology, which Southwest has represented to be in Texas, not Delaware." *Id.* at 13.

But Southwest points out that the District of Delaware already denied Intellectual Ventures' motion to dismiss, stay, or transfer the Delaware Actions. *See* Dkt. No. 109 at 4. And, so, the Delaware Actions will proceed, and Intellectual

Ventures must litigate in Delaware, regardless of this lawsuit's status.

And Intellectual Ventures have not explained why evidence of Southwest's use of Viasat's and Anuvu's products is needed in a lawsuit between Intellectual Ventures and Viasat or Anuvu, to which Southwest is not a party. Southwest's use of technology would be litigated in the severed claim, if necessary, once the Delaware Actions involving the underlying technology are resolved. *See Kirsch*, 2021 WL 4555803, at *5 (finding that a plaintiff is not unduly prejudiced by a stay where "the bulk of the relevant evidence will come from the Manufacturer of an accused product – not a customer").

The Court also notes that Southwest has agreed to be bound by the outcome of the Delaware Actions. *See Unicorn Global*, 2020 WL 9076548, at *2 ("Walmart has already agreed to be bound by the Court's findings on the willful infringement claims. There is no clear tactical advantage for Walmart in severing and staying the case.").

And, so, the Court is not convinced that Intellectual Ventures will be so prejudiced by a stay such that it should not be granted. And it finds that this factor weighs in favor of a stay.

**B. Whether a stay will simplify the issues.**

As to the second factor, Intellectual Ventures argues only that, "because the Customer Suit exception factors are not met, the traditional stay factors are also not met." Dkt. No. 106 at 8.

The Court disagrees. As explained above, on the record before the Court, it appears that the Delaware Actions will lead to "resolution of the major issues" in the

'469 and '326 Patent claims. *Costco*, 2022 WL 1037114, at *3 (quoting *Katz*, 909 F.2d at 1464).

Southwest has provided evidence that the accused in-flight connectivity system is comprised mostly of Viasat's and Anuvu's technology. *See id.* ("Even if a finding that [the manufacturer] is liable would not preclude recovery entirely, it would significantly simplify the infringement claims against these Defendants."). And Southwest has agreed to be bound by the outcome of the Delaware Actions. *See CyWee*, 2018 WL 4002776, at *4 ("Importantly, [defendant] has agreed to be bound by the infringement determination in the Delaware action. … "This [second factor] thus weighs heavily in [defendant's] favor.").

And, so, this factor favors a stay.

### C. Whether discovery is complete and a trial date has been set.

Although the parties have engaged in some discovery, *see, e.g.*, Dkt. No. 46 at 5, discovery is not complete, *see* Dkt. No. 120. And no Markman hearing has occurred. *See Costco*, 2022 WL 1037114, at *4.

And, although a trial date was set before the case was transferred to this Court, *see* Dkt. No. 53, a date for trial before this Court has not been reset since the transfer.

The Court entered an Order Requiring Conference and Joint Status Report on March 6, 2026 requiring the parties to submit new proposed dates for these deadlines. *See* Dkt. No. 120.

And, so, this factor weighs in favor of a stay.

### III.  <u>Severance Factors</u>

For the reasons explained above, the Court finds that consideration of "public and private factors" weighs in favor of severing the '469 and '326 Patent claims. *Rolls Royce*, 775 F.3d at 680.

Any delay or inconvenience would be outweighed by avoiding inconsistent and duplicative litigation of the '469 and '326 Patent claims.

And nothing suggests that severance would lead to "inconsistent judgments" between the '469 and '326 Patent claims and the other patent claims in this lawsuit. *Cf. Defense Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022).

And, so, severance will promote judicial economy.

## Conclusion

For the reasons explained above, the Court finds that severing the '469 and '326 Patent claims from this case and staying them until the resolution of the Delaware Actions is warranted under the customer-suit exception and the traditional stay factors. Oral argument on the issue is not necessary for the Court to reach this conclusion.

And, so, the Court GRANTS the motion to sever and stay [Dkt. No. 17]. And it DENIES the motion for oral argument [Dkt. No. 103].

The Clerk of Court is directed to assign a separate cause number to the severed action – consisting of the '469 and '326 Patent claims from this lawsuit and, specifically, Count III (Southwest's Infringement of U.S. Patent No. 8,027,326) and Count IV (Southwest's Infringement of U.S. Patent No. 7,324,469) of the Amended Complaint for Patent Infringement [Dkt. No. 97] – and assign the severed action to

the presiding United States District Judge and the undersigned United States Magistrate Judge.

Southwest asks the Court to stay the severed action pending the resolution of the Delaware Actions. The Court is not opposed to the relief that Southwest seeks, but, rather than stay the severed action, the Court will administratively close it. The age of a case continues to accrue if it is merely stayed, but, if it is administratively closed, the time is tolled, and the case does not age. And, so, the Court determines that the severed action should be, and will be, administratively closed. The Clerk of the Court is instructed to – after opening the new, severed action – submit JS-6 form to the Administrative Office, thereby removing the severed action from the statistical records. Nothing in this order shall be considered a dismissal or disposition of the severed action.

The parties must promptly inform the Court of the disposition of the Delaware Actions upon their resolution. To that end, the parties must file, in the severed action, a written joint status report every 60 days (starting from the date of this order) or within 14 days of final disposition of the Delaware Actions (whichever is earlier), to notify the Court regarding the status of the disposition of the Delaware Actions.

SO ORDERED.

DATED: March 10, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE