**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:25-cv-02885-L-BN |
| v. | § § | Consolidated with 3:25-cv-03097-L |
| SOUTHWEST AIRLINES CO., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

**APPENDIX IN SUPPORT OF DEFENDANT SOUTHWEST AIRLINES CO.'S BRIEF IN
SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

| Exhibit No. | Description | Appx. Pages |
|:---:|---|:---:|
| **A** | Declaration of S. Wallace Dunwoody | Appx. 3–4 |
| **A-1** | Non-Final Rejection of the application for U.S. Patent No. 7,721,282 dated July 8, 2009 | Appx. 5–27 |
| **A-2** | Amendment made to the application for U.S. Patent No. 7,721,282 dated October 8, 2009 | Appx. 28–32 |
| **A-3** | Applicant Arguments/Remarks Made in an Amendment to the application for U.S. Patent No. 7,257,582 dated March 6, 2007 | Appx. 33–42 |
| **A-4** | Non-Final Rejection of the application for U.S. Patent No. 8,407,722 dated July 23, 2009 | Appx. 43–61 |
| **A-5** | Amendment made to the application for U.S. Patent No. 8,407,722 dated October 23, 2009 | Appx. 62–72 |

Date: January 5, 2026

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
State Bar No. 24040838
wdunwoody@munckwilson.com
Lucas R. Dombroski
Texas Bar No. 24142846
ldombroski@munckwilson.com
**Munck Wilson Mandala, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar. No. 09479355
dhenry@munckwilson.com
**Munck Wilson Mandala, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas State Bar No. 24102969
ttruong@munckwilson.com
**Munck Wilson Mandala, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

## CERTIFICATE OF SERVICE

On January 5, 2026, this document was filed and served on all counsel of record using the

Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

**Appx. 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,** | § § § § | |
| **Plaintiffs,** | § § | **Civil Action No. 3:25-cv-02885-L-BN** |
| **v.** | § § | **Consolidated with 3:25-cv-03097-L** |
| **SOUTHWEST AIRLINES CO.,** | § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § | |

---

**DECLARATION OF S. WALLACE DUNWOODY IN SUPPORT OF DEFENDANT
SOUTHWEST AIRLINES CO.'S BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO
DISMISS**

---

I, S. Wallace Dunwoody, declare as follows:

1. I am an attorney licensed to practice law in the State of Texas and am admitted before this Court. I am an attorney with the law firm Munck Wilson Mandala LLP, and counsel for Defendant Southwest Airlines Co. ("Southwest"). I submit this Declaration in support of Southwest's Airlines Co.'s Brief in Support of Rule 12(b)(6) Motion to Dismiss.

2. I have personal knowledge of the facts herein. If called as a witness, I would testify to the following facts:

3. **Exhibit A-1** is a true and correct copy of a Non-Final Rejection of the application for U.S. Patent No. 7,721,282 dated July 8, 2009.

4. **Exhibit A-2** is a true and correct copy excerpt of an Amendment made to the application for U.S. Patent No. 7,721,282 dated October 8, 2009.

5. **Exhibit A-3** is a true and correct copy excerpt of Applicant Arguments/Remarks Made in an Amendment to the application for U.S. Patent No. 7,257,582 dated March 6, 2007.

**Appx. 3**

6. **Exhibit A-4** is a true and correct copy of a Non-Final Rejection of the application for U.S. Patent No. 8,407,722 dated July 23, 2009.

7. **Exhibit A-5** is a true and correct copy excerpt of an Amendment made to the application for U.S. Patent No. 8,407,722 dated October 23, 2009.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of January 2026, at Dallas, Texas.

/s/ S. Wallace Dunwoody
S. Wallace Dunwoody

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/395,816 | 03/30/2006 | Pradip Kulkarni | PNTNA-P006 | 2625 |

70848          7590          07/08/2009
PANTA c/o MURABITO HAO & BARNES LLP
Two Market Street
3rd Floor
San Jose, CA 95113

| EXAMINER |
|---|
| KHATRI, ANIL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2191 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/08/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**Appx. 5**

| | Application No. | Applicant(s) |
|---|---|---|
| | 11/395,816 | KULKARNI ET AL. |
| **Office Action Summary** | **Examiner** | **Art Unit** | |
| | Anil Khatri | 2191 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>30 March 2006</u>.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>1-33</u> is/are pending in the application.
　　4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-33</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on <u>3/30/06</u> is/are:  a) ☒ accepted or b) ☐ objected to by the Examiner.
　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
　　a) ☐ All　b) ☐ Some * c) ☐ None of:
　　　1. ☐ Certified copies of the priority documents have been received.
　　　2. ☐ Certified copies of the priority documents have been received in Application No. _____.
　　　3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
　　* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
　　Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413)
　　Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

**Appx. 6**

Application/Control Number: 11/395,816                                    Page 2

Art Unit: 2191

## DETAILED ACTION

### *Specification*

The disclosure is objected to because of the following informalities: Summary of

the invention is identical and verbatim as an abstract.

### Content of Specification

(a)    Title of the Invention: See 37 CFR 1.72(a) and MPEP § 606.  The title of
the invention should be placed at the top of the first page of the
specification unless the title is provided in an application data sheet.  The
title of the invention should be brief but technically accurate and
descriptive, preferably from two to seven words may not contain more
than 500 characters.

(b)    Cross-References to Related Applications: See 37 CFR 1.78 and MPEP
§ 201.11.

(c)    Statement Regarding Federally Sponsored Research and Development:
See MPEP § 310.

(d)    The Names Of The Parties To A Joint Research Agreement: See 37 CFR
1.71(g).

(e)    Incorporation-By-Reference Of Material Submitted On a Compact Disc:
The specification is required to include an incorporation-by-reference of
electronic documents that are to become part of the permanent United
States Patent and Trademark Office records in the file of a patent
application.  See 37 CFR 1.52(e) and MPEP § 608.05.  Computer
program listings (37 CFR 1.96(c)), "Sequence Listings" (37 CFR 1.821(c)),
and tables having more than 50 pages of text were permitted as electronic
documents on compact discs beginning on September 8, 2000.

(f)    Background of the Invention:  See MPEP § 608.01(c). The specification
should set forth the Background of the Invention in two parts:

(1)    Field of the Invention: A statement of the field of art to which the
invention pertains.  This statement may include a paraphrasing of
the applicable U.S. patent classification definitions of the subject
matter of the claimed invention.  This item may also be titled
"Technical Field."

      (2)   <u>Description of the Related Art including information disclosed under 37 CFR 1.97 and 37 CFR 1.98</u>: A description of the related art known to the applicant and including, if applicable, references to specific related art and problems involved in the prior art which are solved by the applicant's invention.  This item may also be titled "Background Art."

(g)   <u>Brief Summary of the Invention</u>: See MPEP § 608.01(d).  A brief summary or general statement of the invention as set forth in 37 CFR 1.73.  The summary is separate and distinct from the abstract and is directed toward the invention rather than the disclosure as a whole.  The summary may point out the advantages of the invention or how it solves problems previously existent in the prior art (and preferably indicated in the Background of the Invention).  In chemical cases it should point out in general terms the utility of the invention.  If possible, the nature and gist of the invention or the inventive concept should be set forth.  Objects of the invention should be treated briefly and only to the extent that they contribute to an understanding of the invention.

(h)   <u>Brief Description of the Several Views of the Drawing(s)</u>: See MPEP § 608.01(f).  A reference to and brief description of the drawing(s) as set forth in 37 CFR 1.74.

(i)   <u>Detailed Description of the Invention</u>: See MPEP § 608.01(g).  A description of the preferred embodiment(s) of the invention as required in 37 CFR 1.71.  The description should be as short and specific as is necessary to describe the invention adequately and accurately. Where elements or groups of elements, compounds, and processes, which are conventional and generally widely known in the field of the invention described and their exact nature or type is not necessary for an understanding and use of the invention by a person skilled in the art, they should not be described in detail.  However, where particularly complicated subject matter is involved or where the elements, compounds, or processes may not be commonly or widely known in the field, the specification should refer to another patent or readily available publication which adequately describes the subject matter.

(j)   <u>Claim or Claims</u>: See 37 CFR 1.75 and MPEP § 608.01(m). The claim or claims must commence on separate sheet or electronic page (37 CFR 1.52(b)(3)).  Where a claim sets forth a plurality of elements or steps, each element or step of the claim should be separated by a line indentation. There may be plural indentations to further segregate subcombinations or related steps.  See 37 CFR 1.75 and MPEP § 608.01(i)-(p).

**Appx. 8**

Application/Control Number: 11/395,816                                                    Page 4
Art Unit: 2191

(k)    Abstract of the Disclosure: See MPEP § 608.01(f).  A brief narrative of the
       disclosure as a whole in a single paragraph of 150 words or less
       commencing on a separate sheet following the claims.  In an international
       application which has entered the national stage (37 CFR 1.491(b)), the
       applicant need not submit an abstract commencing on a separate sheet if
       an abstract was published with the international application under PCT
       Article 21.  The abstract that appears on the cover page of the pamphlet
       published by the International Bureau (IB) of the World Intellectual
       Property Organization (WIPO) is the abstract that will be used by the
       USPTO.  See MPEP § 1893.03(e).

(l)    Sequence Listing, See 37 CFR 1.821-1.825 and MPEP §§ 2421-2431.
       The requirement for a sequence listing applies to all sequences disclosed
       in a given application, whether the sequences are claimed or not. See
       MPEP § 2421.02.

Appropriate correction is required.


## *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
conditions and requirements of this title.

Claims 1-33 are rejected under 35 USC 101 because they disclose a claimed invention

that is an abstract idea as defined in the case *In re Warmerdam*, 33, F 3d 1354, 31

USPQ 2d 1754 (Fed. Cir. 1994).

*Analysis*: Claims 1-33 disclosed by the applicant as being a "system for distributing…".

Since the claims are each a series of steps to be performed on a computer the

processes must be analyzed to determine whether they are statutory under 35 USC

101.

Application/Control Number: 11/395,816                                   Page 5
Art Unit: 2191

Examiner interprets that the claims 1-33 are non-statutory because they do not disclose

that how a system will be able to process and carry out its intended results incorporating

a processor, memory and medium. Claims 1-33 recites storage unit, node and block

device without showing how and where is been done? Therefore, claims 1-33 are an

abstract idea and merely a storage unit for some data without representing intermediate

steps so its functionality cannot be realized and does not produce any useful results.

Thus claims 1-33 are non-statutory and rejected under 35 USC 101.


### *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 1-16 recites the limitation "union block device".  There is insufficient

antecedent basis for this limitation in the claim. Further is unclear and vague what

applicant means by union block device?


### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set
forth in section 102 of this title, if the differences between the subject matter sought to be patented and
the prior art are such that the subject matter as a whole would have been obvious at the time the
invention was made to a person having ordinary skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-33 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Pavan et al USPN 6,502,238 in view of Davidson USPN 7,475,274.

**Appx. 10**

Application/Control Number: 11/395,816                                    Page 6
Art Unit: 2191

Regarding claims 1 and 17

Pavan et al teaches

a first storage unit for storing blocks of a root image of the compute node (column 2,

line 29, according to another aspect of the invention, a user program specifying

connections between a plurality of program blocks distributed across a plurality of

processing nodes is received.  At least one program block located on a root processing

node is identified.  The root node is the processing node controlling execution of the

program.  The input and output connections from each one of the program blocks

located on the root node are traced.  Connection between one of the program blocks

located on the root processing node and one of the program blocks located on a

remote processing node are identified.  A first system-level block is inserted on the root

processing node.  A second system-level block is inserted on the remote node.  The

first and second system-level blocks provide network services.  A program fragment is

created for the processing nodes.  The program fragment for each processing node

comprises the program blocks and the system-level blocks located on the processing

node);


a second storage unit for storing a leaf image, the leaf image comprising new data

blocks and changes to the blocks of the root image (column 10, line 12, the

connections out of and into the block are examined to identify a next child of the root

block (box 604).  A connection between two program blocks is also referred to herein

as an "edge." A "child" is a program block that is connected to the current block that is

Application/Control Number: 11/395,816                                          Page 7
Art Unit: 2191

being processed by the "GROW-FRAGMENT" step.  The child may be located on the same processing node as the block or the child may be located on a different processing node.  If the next child of the root node exists (box 606), then the child is examined to determine if the child is already a part of a program fragment (box 610).  If the child is already in a program fragment, then this connection is a backedge and indicates a cycle.  In one embodiment, a variable (e.g. backedge) is set to indicate if the connection is a backedge or not.  After determining if the child is already in a program fragment, the location of the child is compared to the location of the block to determine if the child and the block are located on the same processing node (box 610).  If the child is on a different processing node, then the flowchart continues to FIG. 6B as indicated by the label "C".  If the child is on the same processing node as the block, then the connection between the child and the block is checked to see if the connection is a backedge (box 612).  If the connection is not a backedge, then the flowchart continues at "F" (box 660) of FIG. 6C.  If the connection is a backedge, then the flowchart continues at "H" (box 680) of FIG. 6E). Pavan et al does not teach explicitly a union block device for interfacing between the compute node and the first and second storage units to distribute the application environment to the compute node, wherein the union block device creates the application environment by merging the blocks of the root image stored on the first storage unit with the blocks of the leaf image stored on the second storage unit. However, Davidson teaches (see summary of the invention, column 4, line 30, management node 105 comprises at least one blade substantially dedicated to managing or assisting an administrator.  For example,

Application/Control Number: 11/395,816                                                    Page 8
Art Unit: 2191

management node 105 may comprise two blades, with one of the two blades being

redundant (such as an active/passive configuration).  In one embodiment,

management node 105 may be the same type of blade or computing device as HPC

nodes 115.  But, management node 105 may be any node, including any Number of

circuits and configured in any suitable fashion, so long as it remains operable to at

least partially manage grid 110.  Often, management node 105 is physically or logically

separated from the plurality of HPC nodes 115, jointly represented in grid 110.

In the illustrated embodiment, management node 105 may be communicably coupled

to grid 110 via link 108.  Reference to a "link" encompasses any appropriate

communication conduit implementing any appropriate communications protocol.  As

an example and not by way of limitation, a link may include one or more wires

in one or more circuit boards, one or more internal or external buses, one or

more local area networks (LANs), one or more metropolitan area networks (MANs),

one or more wide area networks (WANs), one or more portions of the Internet, or

a combination of two or more such links, where appropriate.  In one embodiment,

link 108 provides Gigabit or 10 Gigabit Ethernet communications between

management node 105 and grid 110). Therefore, it would have been obvious to a

person of ordinary skill in the art at the time of the invention was made to incorporate

union block in between computing nodes. The modification would have been obvious

because one of ordinary skill in the art would have been motivated to combine teaching

into distributing computing environment to achieve processing efficiency and reduces

compilation time.

Application/Control Number: 11/395,816                                          Page 9
Art Unit: 2191

Regarding claims 2 and 21

Pavan et al teaches

the compute node comprises a server (column 9, line 28, four types of
communications blocks exist: an input client block, an output client block, an input
server block and an output server block.  Communications blocks are inserted into the
system-level program in client-server pairs to facilitate communication between
program blocks distributed across the network.  In the example system-level program
402 shown in FIG. 4, a pair of communications blocks 410, 412 is inserted in the
system-level program between the MIMO program block 112 and the display program
block 110.  One of the communications blocks is a client block and the other is
a server block.  In an example scenario where the MIMO program block 112 is
located on a root node and the display program block 110 is located on a remote
node, the communications block 410 adjacent the MIMO program block 112 is an
output client block and the communications block 412 adjacent the display block
110 is an input server block).

Regarding claims 3 and 22

Pavan et al teaches

compute node comprises a thin-client workstation (column 9, line 28, four types of
communications blocks exist: an input client block, an output client block, an input
server block and an output server block.

Application/Control Number: 11/395,816                                             Page 10
Art Unit: 2191

Communications blocks are inserted into the system-level program in client-server

pairs to facilitate communication between program blocks distributed across the

network.  In the example system-level program 402 shown in FIG. 4, a pair of

communications blocks 410, 412 is inserted in the system-level program between the

MIMO program block 112 and the display program block 110.  One of the

communications blocks is a client block and the other is a server block.  In an example

scenario where the MIMO program block 112 is located on a root node and the display

program block 110 is located on a remote node, the communications block 410

adjacent the MIMO program block 112 is an output client block and the

communications block 412 adjacent the display block 110 is an input server block).


Regarding claims 4 and 23

Pavan et al teaches

 the root image comprises an operating system (column 7, line 26, in one embodiment,

the method of constructing and distributing block-based program fragments is

incorporated into software executing on a computer.  As described below, the software

program constructs the desired application by resolving connection conflicts between

distributed program blocks specified in the user program and inserting the necessary

system-level blocks in the system-level program.  In one embodiment, the software

executes under an operating system such as Solaris 2.5 or the like and executes on an

industry-standard workstation such as a Sun SPARCstation 20 or the like.  The

software program is developed using any high level language having programming

**Appx. 15**

Application/Control Number: 11/395,816                                      Page 11
Art Unit: 2191

constructs to support blocks.  In an example embodiment, the software is

developed using the C++ programming language.  A user interface for allowing

the user to create user programs by selecting program blocks from a block

library is implemented with any common graphical user interface such as Xviews

or the like).


Regarding claims 5 and 24

Davidson teaches

the root image is concurrently accessible to a plurality of compute nodes (column 4,

line 55, grid 110 is a group of nodes 115 interconnected for increased processing

power.  Typically, grid 110 is a 3D Torus, but it may be a mesh, a hypercube,

or any other shape or configuration without departing from the scope of this

disclosure.  Reference to a "torus" may encompass all or a portion of grid 110,

where appropriate, and vice versa, where appropriate.  The links between nodes

115 in grid 110 may be serial or parallel analog links, digital links, or any

other type of link that can convey electrical or electromagnetic signals such

as, for example, fiber or copper.  Each node 115 is configured with an

integrated switch.  This allows node 115 to more easily be the basic construct

for the 3D Torus and helps minimize XYZ distances between other nodes 115.

Further, this may make copper wiring work in larger systems at up to Gigabit

rates with, in some embodiments, the longest cable being less than 5 meters.

In short, node 115 is generally optimized for nearest-neighbor communications

Application/Control Number: 11/395,816                                      Page 12

Art Unit: 2191

and increased I/O bandwidth).


Regarding claims 6, 7, 25 and 26

Pavan et al teaches

 first storage unit is remotely located from the compute node (column 8, line 51, FIG.

5A is a high-level flowchart of one embodiment of a method of translating a user

program to a system-level program.  The initial step "Read in the block program" 502

reads the user program file as input.  The next step "Is the block program distributed?"

504 determines if the program blocks specified in the user program are located on a

single processing node or are distributed across a network of processing nodes.  If the

program blocks are located on a single node then the step "Execute Program" 506

executes the user program.  If the program blocks are distributed across a network,

then the step "GROW_FRAGMENT" 508 detects program blocks located on different

processing nodes and inserts one or more system-level blocks in the system-level

program.  The step "GROW_FRAGMENT" 508 constructs a program fragment

(referred to herein as a fragment) for each node on which one or more program blocks

reside.  The fragment comprises the program blocks and the system-level blocks

running on the node.  After a fragment is constructed for a node, the fragment is written

to the node in the step "WRITE_FRAGMENTS" 510.  The processing node from which

the user program is controlled is referred to as the control node.  In one

embodiment, the control node is the node on which the user program is submitted

for execution.  In addition to the fragment that is written to each remote node, a

fragment (referred to herein as a root fragment) is written to the control node).


 Regarding claim 8, 18 and 27

Pavan et al teaches

 the second storage unit contains a block modification log for the compute node

(column 4, line 48, each one of the program blocks is logically characterized as a

source block, a sink block or an intermediate block.  A source block produces data.

In an application for a control system, example source blocks represent cameras,

infrared cameras, microphones, temperature sensors, pressure sensors, color sensors,

laser sensors, optical sensors, disk drives, tape drives, memory, network monitoring

devices such as an Ethernet sniffer and the like.  A sink block consumes data.

Example sink blocks represent displays, speakers, control valves, plotters, printers,

disk drives, memory, tape drives, locking devices, brakes, throttles and the like.

Between source and sink blocks are intermediate blocks that represent physical

devices or software that perform various processing functions.  Image recognition,

thresholding, synchronization and flow control are examples of functions associated

with intermediate blocks.  Additional intermediate blocks comprise any device or

software that processes or transforms data.  As will be readily apparent to one of skill

in the art, these categories are not mutually exclusive.  For example, a disk storage

system is capable of being represented as either a source block when data is

read from the disk or as a sink block when data is written to the disk.  In the

Application/Control Number: 11/395,816                                    Page 14
Art Unit: 2191

example application shown in FIG. 1, camera A 102 and camera B 104 are

represented by source blocks; display 110 is represented by a sink block; and

synchronizer 106 and image processor 108 are represented as intermediate

blocks).


Regarding claims 9 and 28

Davidson teaches

first storage unit in contained within a first partition on a hard disk and the second

storage unit is contained within a second partition on the hard disk (see figure 5).


Regarding claims 10 and 29

Davidson teaches

the union block device comprises a low-level driver for interfacing between the first and

second storage units and the file system of the compute node (column 4, line 18, at a

high level, HPC server 102 includes a management node 105, a grid 110 comprising a

plurality of nodes 115, and cluster management engine 130.  More specifically, server

102 may be a standard 19" rack including a plurality of blades (nodes 115) with some

or all of the following components: i) dual-processors; ii) large, high bandwidth

memory; iii) dual host channel adapters (HCAs); iv) integrated fabric switching; v)

FPGA support; and vi) redundant power inputs or N+1 power supplies.  These various

components allow for failures to be confined to the node level.  But it will be understood

Application/Control Number: 11/395,816                                    Page 15
Art Unit: 2191

that HPC server 102 and nodes 115 may not include all of these components.

Management node 105 comprises at least one blade substantially dedicated

to managing or assisting an administrator. For example, management node 105

may comprise two blades, with one of the two blades being redundant (such as an

active/passive configuration). In one embodiment, management node 105 may be

the same type of blade or computing device as HPC nodes 115. But, management

node 105 may be any node, including any Number of circuits and configured in

any suitable fashion, so long as it remains operable to at least partially manage grid

110. Often, management node 105 is physically or logically separated from the

plurality of HPC nodes 115, jointly represented in grid 110. In the illustrated

embodiment, management node 105 may be communicably coupled to grid 110 via

link 108. Reference to a "link" encompasses any appropriate communication conduit

implementing any appropriate communications protocol. As an example and not by

way of limitation, a link may include one or more wires in one or more circuit boards,

one or more internal or external buses, one or more local area networks (LANs), one or

more metropolitan area networks (MANs), one or more wide area networks (WANs),

one or more portions of the Internet, or a combination of two or more such links, where

appropriate. In one embodiment, link 108 provides Gigabit or 10 Gigabit Ethernet

communications between management node 105 and grid 110).

Application/Control Number: 11/395,816                                          Page 16
Art Unit: 2191

Regarding claims 11, 12 and 19

Pavan et al teaches

 the union block device, upon receiving a write request from the compute node for a

sector X, creates an appropriate persistent mapping for sector X (column 7, line 53,

FIG. 4 is a functional block diagram of the mapping of a user program 400 for the

control system application shown in FIG. 1 to a corresponding system-level program

402 having program fragments.  In the example shown in FIG. 4, the user program 400

describes the interconnection between the camera A program block 102, the camera B

program block 104, the MIMO program block 112 and the display program block 110.

Each one of the program blocks 102, 104, 110, 112 is located on different a computing

node distributed across a network as shown in FIG. 3).

Regarding claims 13, 14, 30 and 31

Davidson teaches

 the system operates in a high performance computing cluster (column 2, line 1, in one

embodiment, a method for fault tolerance and recovery in a high-performance

computing (HPC) system includes monitoring a currently running node in an HPC

system including multiple nodes.  A fabric coupling the multiple nodes to each other

and coupling the multiple nodes to storage accessible to each of the multiple nodes

and capable of storing multiple hosts that are each executable at any of the multiple

nodes.  The method includes, if a fault occurs at the currently running node,

discontinuing operation of the currently running node and booting the host at a free

node in the HPC system from the storage. Particular embodiments of the present

invention may provide one or more technical advantages.  As an example, particular

embodiments provide fault tolerance and recovery in a cluster of commodity computer

systems.  Particular embodiments provide viable fault tolerance and recovery in a

cluster of commodity computer systems for scientific and data-center computing

applications.  Particular embodiments provide cost-effective fault tolerance and

recovery in a cluster of commodity computer systems for scientific and data-center

computing applications.  Particular embodiments of the present invention provide all,

some, or none of the above technical advantages.  Particular embodiments may

provide one or more other technical advantages, one or more of which may be readily

apparent to a person skilled in the art from the figures, description, and claims herein).


Regarding claims 15 and 32

Pavan et al teaches

the first storage unit is read only (column 4, line 48, each one of the program blocks is

logically characterized as a source block, a sink block or an intermediate block.  A

source block produces data.  In an application for a control system, example source

blocks represent cameras, infrared cameras, microphones, temperature sensors,

pressure sensors, color sensors, laser sensors, optical sensors, disk drives, tape

drives, memory, network monitoring devices such as an Ethernet sniffer and the like.  A

sink block consumes data.  Example sink blocks represent displays, speakers,

Application/Control Number: 11/395,816                                          Page 18
Art Unit: 2191

control valves, plotters, printers, disk drives, memory, tape drives, locking devices,

brakes, throttles and the like.  Between source and sink blocks are intermediate blocks

that represent physical devices or software that perform various processing functions.

Image recognition, thresholding, synchronization and flow control are examples of

functions associated with intermediate blocks.  Additional intermediate blocks comprise

any device or software that processes or transforms data.  As will be readily apparent

to one of skill in the art, these categories are not mutually exclusive.  For example, a

disk storage system is capable of being represented as either a source block when

data is read from the disk or as a sink block when data is written to the disk.  In the

example application shown in FIG. 1, camera A 102 and camera B 104 are

represented by source blocks; display 110 is represented by a sink block; and

synchronizer 106 and image processor 108 are represented as intermediate

blocks).


Regarding claims 16 and 33

Pavan et al teaches

an intermediate image between the root image and the leaf image, wherein the

intermediate image comprises an application environment service group (column 12,

line 1, FIG. 7A is a functional block diagram of the program fragments for the

application shown in FIG. 1.  In the example scenario, the user program shown

in FIG. 2 is submitted for execution on processing node C 300 of FIG. 7A.

After the software identifies that the program blocks specified in the user

Application/Control Number: 11/395,816                                    Page 19
Art Unit: 2191

program are distributed across computing nodes in the network, the software

begins to build a program fragment for each one of the computing nodes having

at least one program block specified in the user program.  In this example

embodiment, the software begins with the program blocks located on node C 300

because node C is the node where the user program was submitted for execution.

The software identifies input synchronizer program block 106 which has two

output ports.  The output ports of program block 106 are connected to input

ports of image processor program block 108.  Because the image processor

program block 108 and the input synchronizer program block 106 reside on the

same node C 300, no communications blocks are required for information to pass

between the program blocks 106, 108. Image processor program block 108 has two

output ports.  One output port is connected to display program block 110 on node D

302.  Because display program block 110 is located on a different computing node than

image processor program block 108, the software must break the connection between

image processor program block 108 and display program block 110 and insert

communications blocks 700, 702.  As described earlier, communications blocks

are inserted into the system-level program in client-server pairs.  First, the software

adds an input server block 702 to the program fragment for node D 302.  The input

server block 702 is coupled to the display program block 110.  Then the software adds

an output client block 700 to the program fragment on node C 300.  The output client

block 700 is coupled to the image processor program block 108.  Next, the software

Application/Control Number: 11/395,816                                         Page 20
Art Unit: 2191

connects an output port of the output client block 700 on node C 300 to an input port of

the input server block 702 on node D 302).


Regarding claim 20

Pavan et al teaches

reconciling the root image and the leaf image to form a new root image(column 13, line

3, the software identifies the connection between camera A program block 102, input

synchronizer block 106, image processor program block 108 and returning to camera A

program block 102 as a feed back loop.  Rather than continuing to follow the

connections between these applications infinitely, the software identifies the connection

between image processor program block 108 and camera A program block 102 (and

the associated communications blocks 706, 704) as a back edge and does not continue

to follow the loop.  A back edge is identified when, in processing a new edge, the new

edge leads to a node that has already been fragmented/processed.  Rather, the

software looks for other connections to image processor program block 108.  After the

software establishes the connections for all of the input and output ports of image

processor program block 108, the software returns to input synchronizer program block

106.  Input synchronizer program block 106 has two input ports.  One of the input ports

is coupled to input client block 710 as described above.  The other input port of the

Input synchronizer program block 106 is connected to an output port of camera B

program block 104 on node B 306.  Because camera B program block 104 is located on

a different computing node than input synchronizer program block 106, the software

Application/Control Number: 11/395,816                                      Page 21
Art Unit: 2191

must break the connection between input synchronizer program block 106 and camera B program block 104 and insert communications blocks 712, 714. First, the software adds an output server block 712 to the program fragment for node B 306. The output server block 712 is coupled to the camera B program block 104. Then the software adds an input client block 714 to the program fragment on node C 300. The input client block 714 is coupled to the input synchronizer program block 106. Next, the software connects the input port of input client block 714 on node C 300 to an output port of the output server block 712 on node B 306).

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Anil Khatri whose telephone number is 571-272-3725. The examiner can normally be reached on M-F 8:30-5:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Wei Zhen can be reached on 571-272-3708. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 11/395,816                                    Page 22
Art Unit: 2191

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


***

/Anil Khatri/

Primary Examiner, Art Unit 2191

**Amendments to the Claims**

1.      (Currently amended) A system for distributing an application environment ~~to a compute node~~ comprising:

a compute node comprising a computer system;

a first storage unit for storing blocks of a root image of the compute node, wherein the first storage unit comprises a first non-volatile memory, wherein the root image comprises a computer program, wherein the blocks comprise sections of data, and wherein a file of the root image comprises at least one block;

a second storage unit for storing a leaf image, the leaf image comprising new data blocks and changes to the blocks of the root image, wherein the second storage unit comprises a second non-volatile memory; and

a union block device for interfacing between the compute node and the first and second storage units to distribute the application environment to the compute node, wherein the union block device comprises a driver, wherein the union block device creates the application environment by merging the blocks of the root image stored on the first storage unit with the blocks of the leaf image stored on the second storage unit.

2.      (Original) The system as recited in Claim 1 wherein the compute node comprises a server.

3.      (Original) The system as recited in Claim 1 wherein the compute node comprises a thin-client workstation.

4.      (Original) The system as recited in Claim 1 wherein the root image comprises an operating system.

5.      (Original) The system as recited in Claim 1 wherein the root image is concurrently accessible to a plurality of compute nodes.

.

6.      (Original) The system as recited in Claim 1 wherein the first storage unit is remotely located from the compute node.

7.      (Original) The system as recited in Claim 1 wherein the second storage unit is remotely located from the compute node.

8.      (Original) The system as recited in Claim 1 wherein the second storage unit contains a block modification log for the compute node.

9.      (Original) The system as recited in Claim 1 wherein the first storage unit in contained within a first partition on a hard disk and the second storage unit is contained within a second partition on the hard disk.

10.      (Original) The system as recited in Claim 1 wherein the union block device comprises a low-level driver for interfacing between the first and second storage units and the file system of the compute node.

11.      (Original) The system as recited in Claim 1 wherein the union block device, upon receiving a write request from the compute node for a sector X, creates an appropriate persistent mapping for sector X.

12.      (Original) The system as recited in Claim 11 wherein the union block device writes sector X on the second storage unit.

13.      (Original) The system as recited in Claim 1 wherein the system operates in a high performance computing cluster.

14.      (Original) The system as recited in Claim 1 wherein the system operates in a grid computing cluster.

15.    (Original) The system as recited in Claim 1 wherein the first storage unit is read only.

16.    (Original) The system as recited in Claim 1 further comprising an intermediate image between the root image and the leaf image, wherein the intermediate image comprises an application environment service group.

17.    (Currently amended) A method for distributing an application environment ~~to a compute node~~ comprising:

storing blocks of a root image of a[[the]] compute node on a first storage unit, <u>wherein the compute node comprises a computer system, and wherein the first storage unit comprises a first non-volatile memory, wherein the root image comprises a computer program, wherein the blocks comprise sections of data, and wherein a file of the root image comprises at least one block</u>;

storing a leaf image comprising new data blocks and changes to the blocks of the root image on a second storage unit, <u>wherein the second storage unit comprises a second non-volatile memory</u>;

merging the blocks of the root image stored on the first storage unit with the blocks of the leaf image stored on the second storage unit to create the application environment; and

delivering the application environment to the compute node.

18.    (Original) The method as recited in Claim 17 further comprising:

modifying the leaf image in response to the compute node's access to the application environment.

19.    (Original) The method as recited in Claim 18 wherein the modifying comprises:

upon receiving a write request from the compute node for a sector X, creating an appropriate persistent mapping for sector X; and

writing sector X on the second storage unit.

20.    (Original) The method as recited in Claim 17 further comprising: reconciling the root image and the leaf image to form a new root image.

21.    (Original) The method as recited in Claim 17 wherein the compute node comprises a server.

22.    (Original) The method as recited in Claim 17 wherein the compute node comprises a thin-client workstation.

23.    (Original) The method as recited in Claim 17 wherein the root image comprises an operating system.

24.    (Original) The method as recited in Claim 17 wherein the root image is concurrently accessible to a plurality of compute nodes.
.

25.    (Original) The method as recited in Claim 17 wherein the first storage unit is remotely located from the compute node.

26.    (Original) The method as recited in Claim 17 wherein the second storage unit is remotely located from the compute node.

27.    (Original) The method as recited in Claim 17 wherein the second storage unit contains a block modification log for the compute node.

28.    (Original) The method as recited in Claim 17 wherein the first storage unit is contained within a first partition on a hard disk and the second storage unit is contained within a second partition on the hard disk.

29.    (Original) The method as recited in Claim 17 wherein merging occurs at an operational level between the first and second storage units and file system of the compute node.

30.    (Original) The method as recited in Claim 17 wherein the method operates in a high performance computing cluster.

31.    (Original) The method as recited in Claim 17 wherein the system operates in a grid computing cluster.

32.    (Original) The method as recited in Claim 17 wherein the first storage unit is read only.

33.    (Original) The method as recited in Claim 17 further comprising:

creating an intermediate image on a third storage unit between the root image and the leaf image, wherein the intermediate image comprises an application environment service group.

Pat. App. 10/375,893

## Remarks:

This amendment is submitted in an earnest effort to advance this case to issue without delay.

The claims have been amended to clarify their language and defined the invention with somewhat greater particularity over the art.

The primary difference between the instant invention and the processes disclosed in US 5,603,028 of Kitsuregawa and 5,357,632 of Pian is that these systems rely on a special control process that uses load information to distribute the load between processors that share the load. With the instant invention as defined in the claims there is no such special process. The prior art's load information is not created with the process of the instant invention. Instead, the load sharing is done as a byproduct of the fact that the load-sharing process take parts of the load on a first-come/first-served basis.

A comparison would be to a road intersection where, according to the prior art, there is a traffic light that determines who can go when. The instant invention is more like such an intersection with a four-way stop so that the individual drivers determine who can go and when.

This is a major improvement since in addition to eliminating the control process it also eliminates the need to

- 6 -

Atty's 22469                                        Pat. App. 10/375,893


collect and maintain load information, which it is very difficult
to do and almost impossible to define so as to anticipate all
possible processors that might execute the subtasks.

The amended claims, refer to a distribution of a
description of the work to be done.  The sharing process can use
such a description to distribute the load without a special load
process.


For these reasons the instant invention is clearly
allowable over the cited art.  Notice to that effect is earnestly
solicited.


If only minor problems that could be corrected by means
of a telephone conference stand in the way of allowance of this
case, the examiner is invited to call the undersigned to make the
necessary corrections.

                                    Respectfully submitted,
                                    K.B. Ross P.C.


                                    by: Andrew Wilford, 26,597
                                        Attorney for Applicant

02 March 2007
5676 Riverdale Avenue  Box 900
Bronx, NY  10471-0900
Cust. No.:  535
Tel:  718 884-6600
Fax:  718 601-1099


Enclosure:          None.


                        - 7 -


                                                    Appx. 34

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/375,893 | 02/27/2003 | Michael Rothschild | 22469 | 6365 |

| | |
|---|---|
| 535        7590        12/08/2006 | EXAMINER |
| THE FIRM OF KARL F ROSS | WU, YICUN |
| 5676 RIVERDALE AVENUE | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2165 | |

PO BOX 900
RIVERDALE (BRONX), NY 10471-0900

DATE MAILED: 12/08/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

Appx. 35

| Office Action Summary | Application No. | Applicant(s) |
| | 10/375,893 | ROTHSCHILD, MICHAEL |
| | Examiner | Art Unit | |
| | Yicun Wu | 2165 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>27 February 2003</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-14</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-14</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>27 February 2003</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All    b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

*Yicun*
*Patent Examiner*
*Technology Center*
*2100*

U.S. Patent and Trademark Office

PTOL-326 (Rev. 08-06)    Office Action Summary    Part of Paper No./Mail Date 20061201

Application/Control Number: 10/375,893                                        Page 2
Art Unit: 2165

## III. DETAILED ACTION

1.      Claims 1-14 are presented for examination.

### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be
> patented and the prior art are such that the subject matter as a whole would have been obvious at
> the time the invention was made to a person having ordinary skill in the art to which the subject
> matter pertains.  Patentability shall not be negatived by the manner in which the invention was
> made.

3.      Claims 1-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kitsuregawa

et al. (U.S. Patent 5,603,028) in view of Pian (U.S. Patent 5,357,632).

As to Claim 1, Kitsuregawa et al discloses a method of effecting a computer-executable

process comprising the steps of:

(a) automatically determining file allocation (i.e. a plurality of data. Col. 3, lines 61-65)

and logically subdividing records (i.e. a total Nx number of data. Col. 4, lines 55-60) of the input

file (Col. 4, lines 55-60)  into a plurality of partitions (Col. 4, lines 55-60);

(b) distributing (i.e. transferred. Col. 4, lines 55-60 and abstract) the partitions to a

plurality (i.e. second group. Col. 4, lines 55-60) and activating respective subtasks of the

computer-executable process in each of the processors (Col. 4, lines 55-60), each subtask reading

and processing the partitions on a first come first serve basis (Col. 4, lines 55-60); and

Application/Control Number: 10/375,893                                          Page 3
Art Unit: 2165

(c) generating at least one output (i.e. output. Col. 5, lines 11-22) reflecting the processing of the

subtasks (Col. 5, lines 11-22 and Col. 4, lines 55-60).

       Kitsuregawa et al does not explicitly teach a plurality of processors.

       Pian teaches a plurality of processors (i.e. a plurality of control processors. Col. 1, lines

49-67 and fig. 1).

       Therefore, it would have been obvious to a person having ordinary skill in the art at the

time the invention was made to have modified Kitsuregawa et al to include a plurality of

processors.

       It would have been obvious to a person having ordinary skill in the art at the time the

invention was made to have modified Kitsuregawa et al by the teaching of Pian to include a

plurality of processors with the motivation to more improve distributed data flow signal network

as taught by Pian (column 1, line 50-55).


       As to Claim 2, Kitsuregawa et al as modified teaches a method wherein

       the automatic determination of file allocation and logical subdivision of records of the

input file into the plurality of partitions in step (a) and the distribution of the partitions in step (b)

is carried out with at least one processor (i.e. a first group of N memories. Kitsuregawa et al Col.

4, lines 49-55 and col. 2, lines 27-30) in addition to the subtask processors formulation (i.e. a

second group of N memories. Kitsuregawa et al Col. 4, lines 49-55).


       As to Claim 3, the teachings of Kitsuregawa et al as modified has been discussed above,

Application/Control Number: 10/375,893                                                    Page 4
Art Unit: 2165

Kitsuregawa et al does not explicitly teach merging the subtask outputs to produce the output of step (c).

Pian teaches merging the subtask outputs to produce the output of step (c). (i.e. joins. Col. 10, lines 1-14).

Therefore, it would have been obvious to a person having ordinary skill in the art at the time the invention was made to have modified Kitsuregawa et al to include merging the subtask outputs to produce the output of step (c).

It would have been obvious to a person having ordinary skill in the art at the time the invention was made to have modified Kitsuregawa et al by the teaching of Pian to include merging the subtask outputs to produce the output of step (c) with the motivation to more improve distributed data flow signal network as taught by Pian (column 1, line 50-55).


As to Claim 4, Kitsuregawa et al as modified teaches a method wherein

the output in step (c) is a succession of outputs from the subtasks in a one to one orrespondence with the records of the input file (Kitsuregawa et al Col. 4, lines 49-60).


As to Claim 5, Kitsuregawa et al as modified teaches a method wherein

the output in step (c) is an accumulation of output records from the subtasks in an arbitrary order (Kitsuregawa et al Col. 4, lines 49-60).


As to Claim 6, Kitsuregawa et al as modified teaches a method wherein

Application/Control Number: 10/375,893                                    Page 5
Art Unit: 2165

the input file resides on a storage area network and is derived therefrom (fig. 3).

As to Claim 7, <u>Kitsuregawa et al</u> as modified teaches a method wherein

the input file resides on a network attached storage and is derived therefrom (fig. 3).

As to Claim 8, <u>Kitsuregawa et al</u> as modified teaches a method wherein the

computer-executable process is a sort process (a sort process is considered intended use) .

As to Claim 9, <u>Kitsuregawa et al</u> as modified teaches a method wherein

the computer-executable process is a statistical analysis process (statistical analysis

process is considered intended use).

As to Claim 10, <u>Kitsuregawa et al</u> as modified teaches a method wherein

the computer-executable process is a report creating process (report creating process is

considered intended use).

As to Claim 11, <u>Kitsuregawa et al</u> as modified teaches a method wherein

the computer-executable process includes a database query (database query is considered

intended use).

As to Claim 12, <u>Kitsuregawa et al</u> as modified teaches a method wherein

Application/Control Number: 10/375,893                                    Page 6
Art Unit: 2165

the one processor is part of a mainframe computer (a mainframe computer is considered

intended use) and the plurality of processors are processors of at least one other computer (i.e. a

plurality of control processors. Pian Col. 1, lines 49-67).


As to Claim 13, Kitsuregawa et al as modified teaches a method wherein

the plurality of processors are all parts of a single multiprocessor (Pian Col. 1, lines 49-67

and fig. 1).


As to Claim 14, Kitsuregawa et al as modified teaches a method  wherein

 the automatic determination of file allocation and logical subdivision of records of the

input file into the plurality of partitions in step (a) and the distribution of the partitions in step (b)

is carried out with at least one processor (Kitsuregawa et al Col. 4, lines 49-60), and

the one processor and the plurality of processors are all parts of a single multiprocessor

(Pian Col. 1, lines 49-67 and fig. 1).

Application/Control Number: 10/375,893                                    Page 7
Art Unit: 2165

### *Points of contact*

4.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Yicun Wu whose telephone number is 571-272-4087.  The

examiner can normally be reached on 8:00 am to 4:30 pm, Monday -Friday.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jeffrey Gaffin can be reached on 571-272-4146.  The fax phone numbers for the

organization where this application or proceeding is assigned are 571-273-8300.

        Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the receptionist whose telephone number is 571-272-2100.


Yicun Wu
Patent Examiner
Technology Center 2100


December 5, 2006

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/396,251 | 03/30/2006 | Timothy Tuttle | 2222.775000E | 1129 |

26111        7590        07/23/2009

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| DAO, TUAN C. |

| ART UNIT | PAPER NUMBER |
|---|---|
| 4142 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/23/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**Appx. 43**

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/396,251 | TUTTLE ET AL. |
| | **Examiner** | **Art Unit** | |
| | Tuan C. Dao | 4142 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>30 March 2006</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>26-62</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>26-62</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>30 March 2006 and 30 August 2006</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All    b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>06/24/2008 and 10/23/2007</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

## DETAILED ACTION

1.      The instant application having Application No. 11/396251 filed on 03/30/2006 is

presented for examination by the examiner.

### Examiner Notes

2.      Examiner cites particular columns and line numbers in the references as applied to

the claims below for the convenience of the applicant. Although the specified citations

are representative of the teachings in the art and are applied to the specific limitations

within the individual claim, other passages and figures may apply as well. It is

respectfully requested that, in preparing responses, the applicant fully consider the

references in entirety as potentially teaching all or part of the claimed invention, as well

as the context of the passage as taught by the prior art or disclosed by the examiner.

### Oath/Declaration

3.      The applicant's oath/declaration has been reviewed by the examiner and is found

to conform to the requirements prescribed in **37 C.F.R. 1.63.**

### Drawings

4.      The applicant's drawings submitted are acceptable for examination purposes.

### Information Disclosure Statement

5.      As required by M.P.E.P. 609, the applicant's submissions of the Information

Disclosure Statements dated 06/24/2008 and 10/23/2007 are acknowledged by the

examiner and the cited references have been considered in the examination of the claims

now pending.

### Specification Objections

6.      The disclosure is objected to because there is not particular definition provided in

the specification for the "computer readable medium".

Appropriate correction is requested.

### Claim Rejections - 35 USC § 101

7.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition
> of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

8.      Claims 33-38 and 51-56 are rejected because the claimed invention is directed to

non-statutory subject matter.

Claim 33 is rejected under 35 U.S.C. 101 as directed to non-statutory subject

matter of software, per se. The claim lacks the necessary physical articles or objects to

constitute a machine or manufacture within the meaning of 35 U.S.C. 101. It is clearly

not a series of steps or acts to be a process nor are they a combination of chemical

compounds to be a composition of matter. As such, they fail to fall within a statutory

category. It is at best, function descriptive material per se.

Descriptive material can be characterized as either "functional descriptive

material" or "nonfunctional descriptive material." Both types of "descriptive material"

are non-statutory when claimed as descriptive material per se, 33 F.3d at 1360, 31

USPQ2d at 1759. When functional descriptive material is recorded on some computer-

readable medium, it becomes structurally and functionally interrelated to the medium and

will be statutory in most cases since use of technology permits the function of the

descriptive material to be realized. Compare In re Lowry, 32 F.3d 1579, 1583-84, 32

USPQ2d 1031, 1035 (Fed. Cir. 1994).

Merely claiming non-functional descriptive material, i.e., abstract ideas, stored on

a computer-readable medium, in a computer, or on an electromagnetic carrier signal, does

not make it statutory. See Diehr, 450 U.S. at 185-86, 209 USPQ at 8 (noting that the

claims for an algorithm in Benson were unpatentable as abstract ideas because "[t]he sole

practical application of the algorithm was in connection with the programming of a

general purpose computer.").

Applicant has claimed a "a routing network" for enabling dynamic updating of a

property of a live object at client coupled to the network in the preamble comprising: "A

gateway that receive .." and "routing means for determining ..'"; this implies that applicant

is claiming a system of software, per se, lacking the hardware necessary to realize any of

the underlying functionality. Therefore, claim 33 is directed to non-statutory subject

matter as computer programs, per se, i.e. the descriptions or expressions of the programs,

are not physical "things." They are neither computer components nor statutory processes,

as they are not "acts" being performed. Such claimed computer programs do not define

any structural and functional interrelationships between the computer program and other

claimed elements of a computer, which permit the computer program's functionality to

be realized.

Claims 34-38 are rejected under 35 U.S.C. 101 as directed to non-statutory subject matter for at least the reason stated above. Claims 34-38 are depended on claim 33, however, they do not add any feature or subject matter that would solve any of the non-statutory deficiencies of claim 33.

Claims 51-56 are considered statutory under 35 U.S.C. 101 because the claimed invention are directed to a statutory subject matter. In this case, although the specification fails to specifically define the term "computer readable medium", however, the examiner interprets that the term "computer readable medium" as a type of physical hardware storage that can be read by a computer. When functional descriptive material is recorded on some computer readable medium, it becomes structurally and functionally interrelated to the medium and will be statutory in most cases since use of technology permits the function of the descriptive material to be realized. Compare In re Lowry, 32 F.3d 1579, 1583-84, 32 USPQ2d 1031, 1035 (Fed. Cir. 1994).

## Claim Rejections - 35 USC § 102

9.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

10.    Claims 39-42, 45-50, 51-56, and 57-62 are rejected under 35 U.S.C. 102(e) as being anticipated by Wu et al. (US Patent Publication No. 2002/0087630 hereafter "Wu").

As per claim 39, Wu discloses a computer method for providing dynamic content over a network, the method comprising:

providing a data representation to a client device coupled to the network (e.g., [0022] rendering near real time information/data to a device display; [0037], displaying event/response on a client device), wherein the data representation includes at least one live object that is recognized by the client device (e.g., [0003] and [0073], near real time message/object; [0045], said message/object is recognized and processed by UAR 201 embedded in client device 206), and wherein the client responds to the live object of the data representation by determining an object ID of the live object to register for updates of the live object with a routing network (e.g., [0061], [0066] and [0069]), such that registering the client with the routing network provides client connection information to the routing network (e.g., [0003], [0014], and [0036]);

sending an update message to the routing network (e.g., [0012] and [0042]), wherein the update message identifies the live object and contains update data that updates a property of the live object (e.g., [0044], [0055], [0064], and [0101]) such that the routing network has sufficient information to identify the client device as a registered device and send a routed message containing the update data to the client device (e.g., [0061], [0066], and [0097]), such that the client device processes the routed message

Application/Control Number: 11/396,251                                    Page 7
Art Unit: 4142

upon receipt to update the property of the live object at the client device (e.g., [0006] and
[0061]).

As per claim 40, Wu discloses the method of claim 39, wherein the live object of
the data representation causes the client device to register with a client proxy of the
network (e.g., [0045] and [0060]).

As per claim 41, Wu discloses the method of claim 39, wherein the live object of
the data representation causes the client device to register with a node of the network
(e.g., [0036] and [0047]).

As per claim 42, Wu discloses the method of claim 39, wherein the received data
representation includes an activation module that is executed by the client device and is
adapted to register the live object with the routing network (e.g., [0012] and [0042]).

As per claim 45, it is an apparatus version, which recite(s) the same limitations as
claim 39, wherein all claimed limitations have been addressed and/or set forth above.
Therefore, as the reference teaches all of the limitations of the above claim(s), it also
teaches all of the limitations of claims 45.

As per claim 46, it is an apparatus version, which recite(s) the same limitations as
claim 40, wherein all claimed limitations have been addressed and/or set forth above.

Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 46.

As per claim 47, it is an apparatus version, which recite(s) the same limitations as claim 41, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 47.

As per claim 48, it is an apparatus version, which recite(s) the same limitations as claim 42, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 48.

As per claim 49, it is an apparatus version, which recite(s) the same limitations as claim 43, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 49.

As per claim 50, it is an apparatus version, which recite(s) the same limitations as claim 44, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 50.

As per claim 51, it is a computer-readable memory medium version, which recite(s) the same limitations as claim 39, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 51.

As per claim 52, it is a computer-readable memory medium version, which recite(s) the same limitations as claim 40, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 52.

As per claim 53, it is a computer-readable memory medium version, which recite(s) the same limitations as claim 41, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 53.

As per claim 54, it is a computer-readable memory medium version, which recite(s) the same limitations as claim 42, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 54.

As per claim 55, it is a computer-readable memory medium version, which recite(s) the same limitations as claim 43, wherein all claimed limitations have been

addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 55.

As per claim 56, it is a computer-readable memory medium version, which recite(s) the same limitations as claim 44, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 56.

As per claim 57, it is a device version, which recite(s) the same limitations as claim 39, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 57.

As per claim 58, it is a device version, which recite(s) the same limitations as claim 40, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 58.

As per claim 59, it is a device version, which recite(s) the same limitations as claim 41, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 59.

Application/Control Number: 11/396,251                                         Page 11
Art Unit: 4142

As per claim 60, it is a device version, which recite(s) the same limitations as claim 42, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 60.

As per claim 61, it is a device versions, which recite(s) the same limitations as claim 43, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 61.

As per claim 62, it is a device version, which recite(s) the same limitations as claim 44, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 62.

### Claim Rejections - 35 USC § 103

11.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Application/Control Number: 11/396,251                                                          Page 12

Art Unit: 4142

12.      Claims 26-38 and 43-44 are rejected under 35 U.S.C. 103(a) as being

unpatentable over by Wu et al. (US Patent Publication No. 2002/0087630 hereafter

"Wu") in view of Giotta et al. (US Patent Publication No. 2002/0120717 hereafter

"Giotta").


         As per claim 26, Wu discloses a method for providing dynamic content over a

network, the method comprising:

         receiving an update message from an input source (e.g., [0060],

publishing/subscribing (receiving) a topic and posting a message associated with the

topic;),

         the update message identifying a live object and containing data for updating a

property of the live object (e.g., [0069], published event (update message) including

properties such as text string, id, expired time);

         identifying a category of the update message (e.g., [0060], the service request are

identified by three categories: subscribe, unsubscribe, and publish);

         determining a client that has registered for updates of the live object and routing

the data to the client (e.g., [0042] and [0066]: determining a subscriber (a client

registering a topic) and routing a message to the subscriber),

         wherein the client is adapted to process the update data and update the property of

the live object (e.g., [0003] and [0045]).

         Wu does not explicitly discloses identifying a mapping of the category to a node

type; routing the update message to a node having the mapped node type.

         However, Giotta further discloses:

**Appx. 55**

Application/Control Number: 11/396,251                                        Page 13

Art Unit: 4142

identifying a mapping of the category to a node type (e.g., [0039]: a multiple of

nodes identified as Client Manager CM nodes and Message Manager MM nodes; by

mapping, the MM nodes providing all the services of the destinations);

routing the update message to a node having the mapped node type (e.g., [0039]

and [0041], routing outgoing messages to only CM nodes, storing messages to MM

nodes).

Wu and Giotta are analogous art because they are from the same filed of endeavor

of delivering messages between computer programs via communication network.

It would have been obvious to a person having ordinary skill in the art at the time

the invention was made to combine routing outgoing messages to only CM nodes of

Giotta into the teaching of Wu because it would provide for the purpose of providing

scalability with respect to performance and connections (e.g., [0027]-[0028]).


As per claim 27, Wu discloses wherein determining a client and routing the data

to the client are performed at the node (e.g., [0066]).


As per claim 28, Wu discloses wherein determining a client comprises extracting

an object ID from the update message and determining a connection to the client (e.g.,

[0042] and [0066]).


As per claim 29, Wu discloses wherein determining a connection comprises

determining at least one client proxy with which the client communicates and routing the

Application/Control Number: 11/396,251                                              Page 14

Art Unit: 4142

data to the client proxy, and then routing the data from the client proxy to the client (e.g.,

[0006], [0012], and [0042]).

As per claim 30, Wu discloses wherein client registration information concerning

the client connection is maintained at the node (e.g., [0014] and [0036]).

As per claim 31, Wu discloses wherein client registration information concerning

the client connection is maintained at the client proxy (e.g., [0033] and [0041]).

As per claim 32, Wu fails to disclose wherein: routing the update message

comprises routing the update message to a proxy node comprising a node that is adapted

to receive messages of more than one message category; and determining a connection

comprises determining at least one corresponding node having a node type that is mapped

to the message category, with which the registered client communicates, and routing the

data to the corresponding node.

However, Giotta further discloses routing the update message comprises routing

the update message to a proxy node comprising a node that is adapted to receive

messages of more than one message category (e.g., [0039], Client Manager CM nodes

and Message Manager MM nodes);

and determining a connection comprises determining at least one corresponding

node having a node type that is mapped to the message category, with which the

registered client communicates, and routing the data to the corresponding node (e.g.,

Application/Control Number: 11/396,251                                        Page 15
Art Unit: 4142

[0039] and [0041], routing outgoing messages to only CM nodes, storing messages to MM nodes).

Wu and Giotta are analogous art because they are from the same filed of endeavor of delivering messages between computer programs via communication network.

It would have been obvious to a person having ordinary skill in the art at the time the invention was made to combine routing outgoing messages to only CM nodes of Giotta into the teaching of Wu because it would provide for the purpose of providing scalability with respect to performance and connections (e.g., [0027]-[0028]).

As per claim 33, it recite(s) the same limitations as claim 26, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claim 33.

As per claim 34, Wu discloses wherein the routing means extracts an object ID from the update message and determines a connection to the registered client for routing the data to the registered client (e.g., [0042] and [0061]).

As per claim 35, Wu discloses wherein the routing means determines a connection by determining at least one client proxy with which the registered client communicates, and then routing the data to the client proxy (e.g., [0061] and [0066]).

Application/Control Number: 11/396,251                                    Page 16
Art Unit: 4142

As per claim 36, it is a routing network version, which recite(s) the same limitations as claim 30, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 36.

As per claim 37, it is a routing network version, which recite(s) the same limitations as claim 31, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 37.

As per claim 38, it is a routing network version, which recite(s) the same limitations as claim 32, wherein all claimed limitations have been addressed and/or set forth above. Therefore, as the reference teaches all of the limitations of the above claim(s), it also teaches all of the limitations of claims 38.

As per claim 43, Wu fails to disclose wherein the activation module determines a node type that handles registration and causes the client device to register with a node of the determined registration node type.

However, Giotta further discloses the activation module determines a node type that handles registration and causes the client device to register with a node of the determined registration node type (e.g., [0039], Client Manager CM nodes and Message Manager MM nodes).

Wu and Giotta are analogous art because they are from the same filed of endeavor of delivering messages between computer programs via communication network.

It would have been obvious to a person having ordinary skill in the art at the time the invention was made to combine Client Manager CM nodes and Message Manager MM nodes of Giotta into the teaching of Wu because it would provide for the purpose of providing scalability with respect to performance and connections (e.g., [0027]-[0028]).

As per claim 44, Wu fails to disclose wherein the activation module determines a message category of the data representation and causes the client device to register with a node having a node type corresponding to the message category.

However, Giotta further discloses the activation module determines a message category of the data representation and causes the client device to register with a node having a node type corresponding to the message category (e.g., [0020] and [0041]).

Wu and Giotta are analogous art because they are from the same filed of endeavor of delivering messages between computer programs via communication network.

It would have been obvious to a person having ordinary skill in the art at the time the invention was made to combine Client Manager CM nodes and Message Manager MM nodes of Giotta into the teaching of Wu because it would provide for the purpose of providing scalability with respect to performance and connections (e.g., [0027]-[0028]).

**<u>Conclusion</u>**

13.     Any inquiry concerning this communication should be directed to examiner Tuan Dao, whose telephone/fax numbers are (571) 270 3387, respectively. The examiner can normally be reached on every Monday-Thursday, and the second Friday of the bi-week from 7:30AM to 5:00PM.

14.     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Thomas Pham, can be reached at (571) 272 3689.

        The fax phone number for the organization where this application or proceeding is assigned is (571) 273 8300.

        Any inquiry of a general nature of relating to the status of this application or proceeding should be directed to the TC 2100 Group receptionist whose telephone number is (571) 272 2100.

        Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

/T. C. D./

Examiner, Art Unit 4142

                                /THOMAS K PHAM/
                                Supervisory Patent Examiner, Art Unit 4142

- 3 -

Reply to Office Action of July 23, 2009

Tuttle *et al.*
Appl. No. 11/396,251

## *Amendments to the Claims*

 This listing of claims will replace all prior versions, and listings, of claims in the application.

1-25. (canceled)

26. (Currently Amended)  A method for providing dynamic content over a network, the method comprising:

 receiving, using a processing device, an update message from an input source, the update message identifying a live object and containing data for updating a property of the live object;

 identifying, using the processing device, a category of the update message;

 identifying, using the processing device, a mapping of the category to a node type;

 routing, using the processing device, the update message to a node having the mapped node type; and

 determining, using the processing device, a client that has registered for updates of the live object and routing the data to the client, wherein the client is adapted to process the update data and update the property of the live object.

27. (Previously Presented)  The method of claim 26, wherein determining a client and routing the data to the client are performed at the node.

28. (Previously Presented)  The method of claim 26, wherein determining a client comprises extracting an object ID from the update message and determining a connection to the client.

- 4 -

Reply to Office Action of July 23, 2009

Tuttle *et al.*
Appl. No. 11/396,251

29.    (Previously Presented)  The method of claim 28, wherein determining a connection comprises determining at least one client proxy with which the client communicates and routing the data to the client proxy, and then routing the data from the client proxy to the client.

30.    (Previously Presented)  The method of claim 29, wherein client registration information concerning the client connection is maintained at the node.

31.    (Previously Presented)  The method of claim 29, wherein client registration information concerning the client connection is maintained at the client proxy.

32.    (Previously Presented)  The method of claim 28, wherein:

routing the update message comprises routing the update message to a proxy node comprising a node that is adapted to receive messages of more than one message category; and

determining a connection comprises determining at least one corresponding node having a node type that is mapped to the message category, with which the registered client communicates, and routing the data to the corresponding node.

33.    (Currently Amended)  A routing network for enabling dynamic updating of a property of a live object at a client coupled to the network, the routing network comprising:

a gateway that receives, using a processing device, an update message from an input source, the update message identifying a live object and containing data for updating a property of the live object, wherein the gateway identifies a category of the update message, identifies a mapping of the category to a node type, and routes the update message in accordance with the identified mapping; and

Atty. Dkt. No. 2222.775000E

**Appx. 63**

- 5 -

routing means for determining, using the processing device, a client that has registered for updates of the live object and routing the data from a node that has received the routed update message to the registered client, wherein the registered client is adapted to process the data and update the property of the live object.

34.    (Previously Presented)  The routing network of claim 33, wherein the routing means extracts an object ID from the update message and determines a connection to the registered client for routing the data to the registered client.

35.    (Previously Presented)  The routing network of claim 34, wherein the routing means determines a connection by determining at least one client proxy with which the registered client communicates, and then routing the data to the client proxy.

36.    (Previously Presented)  The routing network of claim 35, wherein client registration information concerning the client connection is maintained at the node.

37.    (Previously Presented)  The routing network of claim 35, wherein client registration information concerning the client connection is maintained at the client proxy.

38.    (Previously Presented)  The routing network of claim 33, wherein:

the gateway routs the update message by routing the update message to a proxy node comprising a node that is adapted to receive messages of more than one message category; and

Tuttle *et al.*

Reply to Office Action of July 23, 2009

Appl. No. 11/396,251

the routing means determines at least one corresponding node that has a node type mapped to the message category and with which the registered client communicates, and then routing the data to the corresponding node.

39.    (Currently Amended)  A computer method for providing dynamic content over a network, the method comprising:

providing, using a processing device,  a data representation to a client device coupled to the network, wherein the data representation includes at least one live object that is recognized by the client device, and wherein the client responds to the live object of the data representation by determining an object ID of the live object to register for updates of the live object with a routing network, such that registering the client with the routing network provides client connection information to the routing network; and

sending, using the processing device,  an update message to the routing network, wherein the update message identifies the live object and contains update data that updates a property of the live object such that the routing network has sufficient information to identify the client device as a registered device and send a routed message containing the update data to the client device, such that the client device processes the routed message upon receipt to update the property of the live object at the client device.

40.    (Previously Presented)  The method of claim 39, wherein the live object of the data representation causes the client device to register with a client proxy of the network.

41.    (Previously Presented)  The method of claim 39, wherein the live object of the data representation causes the client device to register with a node of the network.

Atty. Dkt. No. 2222.775000E

- 7 -

42.      (Previously Presented)  The method of claim 39, wherein the received data representation includes an activation module that is executed by the client device and is adapted to register the live object with the routing network.

43.      (Previously Presented)  The method of claim 42, wherein the activation module determines a node type that handles registration and causes the client device to register with a node of the determined registration node type.

44.      (Previously Presented)  The method of claim 42, wherein the activation module determines a message category of the data representation and causes the client device to register with a node having a node type corresponding to the message category.

45.      (Currently Amended)  An apparatus for providing dynamic content over a network, the apparatus comprising:

a content provider that provides, using a processing device, a data representation to a client device coupled to the network, wherein the data representation includes at least one live object that is recognized by the client device, and wherein the client responds to the live object of the data representation by determining an object ID of the live object to register for updates of the live object with a routing network, such that registering the client with the routing network provides client connection information to the routing network;

an information provider that sends, using the processing device, an update message to the routing network, wherein the update message identifies the live object and contains update data that updates a property of the live object such that the routing network has sufficient information

Atty. Dkt. No. 2222.775000E

**Appx. 66**

- 8 -                                                    Tuttle *et al.*
Reply to Office Action of July 23, 2009                 Appl. No. 11/396,251

to identify the client device as a registered device and send a routed message containing the

update data to the client device, such that the client device processes the routed message upon

receipt to update the property of the live object at the client device.


46.    (Previously Presented)  The apparatus of claim 45, wherein the live object of the data

representation causes the client device to register with a client proxy of the network.


47.    (Previously Presented)  The apparatus of claim 45, wherein the live object of the data

representation causes the client device to register with a node of the network.


48.    (Previously Presented)  The apparatus of claim 45, wherein the received data

representation includes an activation module that is executed by the client device and is adapted

to register the live object with the routing network.


49.    (Previously Presented)  The apparatus of claim 48, wherein the activation module

determines a node type that handles registration and causes the client device to register with a

node of the determined registration node type.


50.    (Previously Presented)  The apparatus of claim 48, wherein the activation module

determines a message category of the data representation and causes the client device to register

with a node having a node type corresponding to the message category.


51.    (Currently Amended)  A <u>tangible</u> computer-readable medium having <u>stored thereon</u>

computer-<u>executable instructions</u> ~~code embodied therein~~ for providing dynamic content over a

Atty. Dkt. No. 2222.775000E

**Appx. 67**

Reply to Office Action of July 23, 2009                     Tuttle *et al.*
                                                    Appl. No. 11/396,251

network that, if executed by a computing device, cause the computing device to ~~the computer program code configured to cause a computing device to~~ perform ~~operations~~ a method comprising:

   providing, using a processing device,  a data representation to a client device coupled to the network, wherein the data representation includes at least one live object that is recognized by the client device, and wherein the client responds to the live object of the data representation by determining an object ID of the live object to register for updates of the live object with a routing network, such that registering the client with the routing network provides client connection information to the routing network; and

   sending, using the processing device,  an update message to the routing network, wherein the update message identifies the live object and contains update data that updates a property of the live object such that the routing network has sufficient information to identify the client device as a registered device and send a routed message containing the update data to the client device, such that the client device processes the routed message upon receipt to update the property of the live object at the client device.


52.    (Previously Presented)  The computer-readable medium of claim 51, wherein the live object of the data representation causes the client device to register with a client proxy of the network.


53.    (Previously Presented)  The computer-readable medium of claim 51, wherein the live object of the data representation causes the client device to register with a node of the network.

- 10 -

Tuttle *et al.*
Appl. No. 11/396,251

54.    (Previously Presented)  The computer-readable medium of claim 51, wherein the received data representation includes an activation module that is executed by the client device and is adapted to register the live object with the routing network.

55.    (Previously Presented)  The computer-readable medium of claim 54, wherein the activation module determines a node type that handles registration and causes the client device to register with a node of the determined registration node type.

56.    (Previously Presented)  The computer-readable medium of claim 54, wherein the activation module determines a message category of the data representation and causes the client device to register with a node having a node type corresponding to the message category.

57.    (Currently Amended)  A device for providing dynamic content over a network, the device comprising:

logic configured to provide, using a processing device,  a data representation to a client device coupled to the network, wherein the data representation includes at least one live object that is recognized by the client device, and wherein the client responds to the live object of the data representation by determining an object ID of the live object to register for updates of the live object with a routing network, such that registering the client with the routing network provides client connection information to the routing network; and

logic configured to provide, using the processing device,  an update message to the routing network, wherein the update message identifies the live object and contains update data that updates a property of the live object such that the routing network has sufficient information to identify the client device as a registered device and send a routed message containing the

Atty. Dkt. No. 2222.775000E

**Appx. 69**

Reply to Office Action of July 23, 2009

Tuttle *et al.*
Appl. No. 11/396,251

update data to the client device, such that the client device processes the routed message upon

receipt to update the property of the live object at the client device.


58.    (Previously Presented)  The device of claim 57, wherein the live object of the data

representation causes the client device to register with a client proxy of the network.


59.    (Previously Presented)  The device of claim 57, wherein the live object of the data

representation causes the client device to register with a node of the network.


60.    (Previously Presented)  The device of claim 57, wherein the received data representation

includes an activation module that is executed by the client device and is adapted to register the

live object with the routing network.


61.    (Previously Presented)  The device of claim 60, wherein the activation module determines

a node type that handles registration and causes the client device to register with a node of the

determined registration node type.


62.    (Previously Presented)  The device of claim 60, wherein the activation module determines

a message category of the data representation and causes the client device to register with a node

having a node type corresponding to the message category.


63.    (New)   A method comprising:

providing, using a processing device, a live object to a client device;


Atty. Dkt. No. 2222.775000E

**Appx. 70**

- 12 -

Reply to Office Action of July 23, 2009

Tuttle *et al.*
Appl. No. 11/396,251

sending, using the processing device, an update message to a routing network, the update message identifying the live object and containing update data to update the live object; and

if the client device is registered to receive update data for the identified live object, sending, using the processing device, from the routing network a routed message containing the update data to the client device.

64.    (New)  An apparatus that provides dynamic content, the apparatus comprising:

a content provider arranged to provide a live object to a client device; and

an information provider arranged to provide an update message to a routing network, the update message identifying the live object and containing update data to update the live object,

wherein the routing network is arranged to send a routed message containing the update data to the client device if the client device is registered to receive update data for the identified live object.

65.    (New)  A tangible computer-readable storage medium having stored thereon computer-executable instructions for providing dynamic content over a network, that if executed by a computing device, cause the computing device to perform a method comprising:

providing, using a processing device, a live object to a client;

sending, using the processing device, an update message to a routing network, the update message identifying the live object and containing update data to update the live object; and

if the client device is registered to receive update data for the identified live object, sending, using the processing device, from the routing network a routed message containing the update data to the client device.

Atty. Dkt. No. 2222.775000E

- 13 -

Tuttle *et al.*
Appl. No. 11/396,251

66.     (New)  A device for providing dynamic content, the device comprising:

logic configured to provide a live object to a client;

logic configured to provide an update message to a routing network, the update message identifying the live object and containing update data to update the live object; and

logic configured to send a routed message containing the update data to the client device if the client device is registered to receive update data for the identified live object.

Atty. Dkt. No. 2222.775000E

**Appx. 72**